**KAZEROUNI LAW GROUP, APC**
David J. McGlothlin, Esq. (SBN: 253265)
david@kazlg.com
Mona Amini, Esq. (SBN: 296829)
mona@kazlg.com
245 Fischer Avenue, Unit D1
Costa Mesa, CA 92626
Telephone: (800) 400-6808
Facsimile:  (800) 520-5523

**THE CONSUMER PROTECTION FIRM, PLLC**
Heather H. Jones, Esq. *(*Pro Hac Vice forthcoming)*
4030 Henderson Blvd.
Tampa, FL 33629
Telephone: (813) 500-1500;
Facsimile:  (813) 435-2369
Email: heather@theconsumerprotectionfirm.com

*Attorneys for Plaintiff,*
Andrew Dravecz

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANDREW DRAVECZ,<br><br>                    Plaintiff,<br><br>        vs.<br><br>WESTLAKE SERVICES, LLC d/b/a WESTLAKE FINANCIAL SERVICES, LLC,<br><br>                    Defendant(s). | Case No.:<br><br>**COMPLAINT FOR DAMAGES FOR VIOLATIONS OF:**<br><br>**I.   THE TELEPHONE CONSUMER PROTECTION ACT, 47 U.S.C. § 227, ET SEQ.**<br>**II.  THE FAIR CREDIT REPORTING ACT, 15 U.S.C. § 1681, ET SEQ.**<br>**III. INVASION OF PRIVACY**<br><br>**JURY TRIAL DEMANDED** |

//

//

//

//

//

1
COMPLAINT

## INTRODUCTION

1.   The United States Supreme Court eloquently captured our country's sentiment stating, "Americans passionately disagree about many things.  But they are largely united in their disdain for robocalls." (*William P. Barr v. American Association of Political Consultants* 2020 U.S. LEXIS 3544, (U.S. July 6, 2020).

2.   "Senator Hollings, the TCPA's sponsor, described these calls as 'the scourge of modern civilization.  They wake us up in the morning; they interrupt our dinner at night; they force the sick and elderly out of bed; they hound us until we want to rip the telephone out of the wall.' 137 Cong. Rec. 30, 821 (1991).  Senator Hollings presumably intended to give telephone subscribers another option: telling the autodialers to simply stop calling." *Osorio v. State Farm Bank*, F.S.B., 746 F. 3d 1242, 1256 (11th Cir. 2014).  Despite the penalties put in place over 29 years ago, robocall abuse continues to skyrocket.

3.   Plaintiff, Andrew Dravecz ("Plaintiff"), alleges that Defendant, Westlake Services, LLC, d/b/a Westlake Financial Services, LLC ("Westlake" or "Defendant"), robocalled him approximately 100 times in stark violation of the Telephone Consumer Protection Act, 47 U.S.C. § 227 *et seq.* ("TCPA"), and is subject to liability for Invasion of Privacy ("IOP").

4.   In addition, Defendant falsely reported the tradeline to national credit reporting agencies, not merely as owed, but as delinquent, while failing to investigate Plaintiff's valid disputes, thereby violating Plaintiff's rights under the Fair Credit Reporting Act, 15 U.S.C. 1681, *et seq.* ("FCRA").

5.   Robocalls are very inexpensive to make.  As was noted in a Senate hearing on the subject: "With such a cheap and scalable business model, bad actors can blast literally tens of millions of illegal robocalls over the course of a single day at less than 1 cent per minute." *Stopping Fraudulent Robocall Scams: Can More Be Done?: Hearing Before the Subcomm. on Consumer Prot., Prod. Safety, and Ins. of the S. Comm. on Commerce, Sci., and Transp.*, 113 Cong. 113-117 (2013) (statement

of Lois Greisman, Assoc. Director, Division of Marketing Practices, Bureau of Consumer Protection, Federal Trade Commission).

6.     The TCPA was enacted to prevent companies like Westlake from invading American citizens' privacy and prevent illegal robocalls.

7.     Congress enacted the TCPA to prevent real harm.  Congress found that "automated or pre-recorded calls are a nuisance and an invasion of privacy, regardless of the type of call" and decided that "banning" such calls made without consent was "the only effective means of protecting telephone consumers from this nuisance and privacy invasion." Pub. L. No. 102-243, §§ 2(10-13) (Dec. 20, 1991), codified at 47 U.S.C. § 227; see also *Mims v. Arrow Fin. Servs., LLC*, 132 S. Ct. 740, 744 (2012) ("The Act bans certain practices invasive of privacy").

8.     According to findings by the FCC—the agency Congress vested with authority to issue regulations implementing the TCPA—such calls are prohibited because, as Congress found, automated or prerecorded telephone calls are a greater nuisance and invasion of privacy than live solicitation calls, and such calls can be costly and inconvenient.  The FCC also recognized that wireless customers are charged for incoming calls whether they pay in advance or after the minutes are used.

9.     This private cause of action is a straightforward provision designed to achieve a straightforward result.  Congress enacted the law to protect against invasions of privacy that were harming people.  The law empowers each person to protect his own personal rights.  Violations of the law are clear, as is the remedy. *Krakauer v. Dish Network, L.L.C.,* 925 F.3d 643, 650 (4th Cir.2019)

## **JURISDICTION AND VENUE**

10.     Jurisdiction and venue for purposes of this action are appropriate and conferred by 28 U.S.C. §1331.

11.     Violations described in the Complaint occurred while Plaintiff was in Denver, Colorado.

12.     Defendant's corporate office is located in Los Angeles, California where it conducts regular and systematic business activities such that venue is proper in California. Thus, personal jurisdiction is established.

13.     Venue is proper in the United States District Court for the Central District of California pursuant to 28 U.S.C. § 1391 because the conduct complained of herein occurred within this judicial district and many of the acts and transactions giving rise to this action occurred in this district because Defendant:

(a) Is authorized to conduct business in this district and has intentionally availed itself of the laws and markets within this district;

(b) Does substantial business within this district;

(c) Is subject to personal jurisdiction in this district because it has availed itself of the laws and markets within this district; and,

(d) The harm to Plaintiff occurred within this district.

## PARTIES

14.     Plaintiff is a natural person and is currently a citizen of the State of New Jersey, currently residing in Westville, New Jersey.

15.     Plaintiff is an "alleged debtor" and "consumer" as that term is defined under 15 U.S.C. § 1681a(c).

16.     Defendant is a California Limited Liability Company with a headquarters or principal place of business located in Los Angeles, California. Defendant is "person" as defined by 47 U.S.C. § 153 (10).

17.     Defendant is a lender that is regularly involved in the acquisition and servicing of prime to sub-prime automotive retail installment contracts. Westlake Services offers auto finance, equity loans, and other financial products to consumers throughout the United States.

18.     Defendant is a furnisher of information as contemplated by FCRA sections 1681s-2(a) & (b), in that it regularly and in the ordinary course of business

furnishes information to one or more consumer reporting agencies about consumer transactions or experiences with any consumer.

## FACTUAL ALLEGATIONS

19.    Plaintiff incorporates the above paragraphs by reference as though fully stated herein.

20.    At various and multiple times prior to this action, Defendant contacted Plaintiff in attempt to collect an alleged outstanding debt.

21.    Plaintiff is the regular user and carrier of the cellular telephone number at issue, (856) 842-XXXX.

22.    Plaintiff was the "called party" during each phone call subject to this lawsuit.

23.    Defendant intentionally harassed and abused Plaintiff on numerous occasions by calling multiple times during one day, with such frequency as can reasonably be expected to harass, including calling over 50 times within a 30 day period.

24.    All telephonic communications by Defendant or its affiliates, subsidiaries, or agents of Defendant to Plaintiff's cellular telephone were made using an "automatic telephone dialing system" ("ATDS") or an artificial or prerecorded voice as defined by 47 U.S.C. § 227(b)(l)(A).

25.    "Express consent" is narrowly construed by the Courts.

26.    It is Defendant's burden to prove they had "express consent" per the TCPA to call the Plaintiff on his cell phone using an "automatic telephone dialing system" (ATDS).

27.    It is the Defendant's burden to prove they had "express consent" per the TCPA to call the Plaintiff on his cell phone using an ATDS for each account they were calling on.

28.    Defendant was put on notice Plaintiff did not want the Defendant contacting him.

29.     Defendant was told repeatedly that Plaintiff was unable to make payments at that time, due to losing his job as a result of the COVID-19 pandemic.

30.     Plaintiff expressly revoked any express consent Defendant may have mistakenly believed it had for placement of telephone calls to Plaintiff's aforementioned cellular telephone number by the use of an ATDS or a pre-recorded or artificial voice.

31.     Defendant attempted to collect a debt from the Plaintiff by this campaign of telephone calls.

32.     Defendant made at least one hundred (100) calls to (856) 842-XXXX.

33.     Each call the Defendant made to (856) 842-XXXX in the last four years was made using an ATDS.

34.     Each call the Defendant made to the Plaintiff's cell phone was done so without the "express permission" of the Plaintiff.

35.     Each call the Defendant made to the Plaintiff was made using an ATDS or using a "prerecorded voice" as specified by the TCPA, 47 U.S.C. § 227(b)(1)(A).

36.     The Ninth Circuit U.S. Court of Appeals has held that an ATDS "means equipment which has the capacity—(1) to store numbers to be called or (2) to produce numbers to be called, using a random or sequential number generator—and to dial such numbers automatically (even if the system must be turned on or triggered by a person)." *Marks v. Crunch San Diego, LLC*, 904 F.3d 1041, 1053 (9th Cir. 2018); *Duran v. La Boom Disco, Inc.*, 955 F.3d 279, 285 (2d. Cir. 2020) (same); *Allan v. Pa. Higher Educ. Assistance Agency*, No. 19-2043 (6th Cir. Jul. 29, 2020) (same).

37.     Plaintiff repeatedly requested the Defendant to stop calling his cell phone, however, the Defendant continued to make calls.

38.     Plaintiff's conversations with the Defendant putting them on notice that he did not want more phone calls were ignored.

39.     Defendant has recorded at least one conversation with the Plaintiff.

40.     Defendant has recorded numerous conversations with the Plaintiff.

41.     Defendant has made approximately one hundred (100) calls to Plaintiff's aforementioned cellular telephone number since in or about March of 2020 which will be established exactly once Defendant turns over their dialer records.

42.     Despite actual knowledge of their wrongdoing, the Defendant continued the campaign of abusive robocalls.

43.     Defendant has been sued in federal court where the allegations include calling an individual using an ATDS after the individual asked for the calls to stop.

44.     Moreover, "wireless customers [like Plaintiff] are charged for incoming calls whether they pay in advance or after the minutes are used."  In re: *Rules Implementing the TCPA of 1991*, 23 FCC Rcd 559, 562 (2007).  Defendant's phone calls harmed Plaintiff by depleting the battery life on his cellular telephone, and by using minutes allocated to Plaintiff by his cellular telephone service provider.

45.     In the last 3 years, the Defendant has had 584 complaints reported to the Better Business Bureau (BBB), of which 273 of those complaints are classified as being related to "Billing/Collection Issues."  *See* https://www.bbb.org/us/ca/los-angeles/profile/collections-agencies/westlake-financial-services-1216-13009156.

46.     Since January 2017, Defendant has had 251 complaints classified under "communications tactics" filed against it with the Consumer Financial Protection Bureau   ("CFPB").   *See*   consumerfinance.gov/data-research/consumer-complaints/search.

47.     Westlake is infamous for preying on unsophisticated consumers and for violating federal and state consumer protection laws while engaging in unfair and illegal debt collection tactics.  Their widespread illegal conduct caught the attention of the CFPB and Westlake was ordered to pay consumers $44 million dollars in relief for its widespread unlawful debt collection activities.  *See* http://files.consumerfinance.gov/f/201509_cfpb_consent-order-westlake-services-llc.pdf (the "Order").

48.    As part of the Order, the CFPB mandated Westlake to cease its unlawful and illegal debt collection activities and overhaul its business practices.  Despite being ordered by the federal government to clean up its act, Westlake continues to abuse customers, like Plaintiff, on a regular and systematic basis.

49.    Defendant regularly profits from breaking the law which acts as an incentive to continue violating the TCPA and other state and federal statutes.

50.    Plaintiff expressly revoked any consent Defendant may have mistakenly believed it had for placement of telephone calls to Plaintiff's aforementioned cellular telephone by the use of an ATDS or a pre-recorded or artificial voice immediately upon Defendant's placement of the calls.

51.    None of Defendant's telephone calls placed to Plaintiff were for "emergency purposes" as specified in 47 U.S.C. §227(b)(1)(A).

52.    Defendant willfully or knowingly violated the TCPA with respect to the Plaintiff.

53.    By effectuating these unlawful phone calls, Defendant has caused Plaintiff the very harm that Congress sought to prevent—namely, a "nuisance and invasion of privacy."

54.    Defendant's aggravating and annoying phone calls trespassed upon and interfered with Plaintiff's rights and interests in his cellular telephone and cellular telephone line, by intruding upon Plaintiff's seclusion.

55.    Defendant's phone calls harmed Plaintiff by wasting his time and negatively affecting his credit.

56.    Defendant falsely reported the tradeline to national credit reporting agencies, not merely as owed, but as delinquent, while failing to investigate Plaintiff's valid disputes, thereby violating Plaintiff's rights under the Fair Credit Reporting Act, 15 U.S.C. § 1681, *et seq.* ("FCRA").

57.     Defendant failed to review all relevant information provided by Plaintiff in the dispute to the credit reporting agencies, as required by and in violation of 15 U.SC. § 1681s-2(b)(1)(B).

58.     Defendant failed to conduct a reasonable investigation with respect to the disputed information as required by 15 U.SC. § 1681s-2(b)(1)(A) by failing to remove all of the disputed and incorrect information, and failing to notate, as required, Plaintiff's dispute as required by 15 U.S.C. §1681s-2(a)(3).

59.     Due to Defendant's failure to reasonably investigate Plaintiff's disputes, Defendant  further failed to correct and update Plaintiff's information as required by 15 U.S.C. § 1681s-2(b)(1)(E), thereby causing continued reporting of inaccurate information related to Plaintiff in violation of 15 U.S.C. § 1681-s(2)(b)(1)(C).

60.     By inaccurately reporting account information after notice and confirmation of its errors, Defendant failed to take appropriate measures as required by 15 U.S.C. § 1681s-2(b)(1)(D); and, (E).

61.     Defendant's inaccurate and negative reporting to national credit reporting agencies damaged Plaintiff's credit and negatively impacted Plaintiff's credit score.

### COUNT I

### Violation of the TCPA, 47 U.S.C. § 227, et seq.

62.     Plaintiff incorporates the paragraphs above as though fully restated herein.

63.     The foregoing acts and omissions constitute violations of the TCPA by Defendant, including but not limited to violations of 47 U.S.C. § 227(b)(l).

64.     Defendant knowingly or willfully violated the TCPA with respect to the Plaintiff each time they called the Plaintiff after he revoked his consent to be called by them using an ATDS or pre-recorded voice.

65.     Defendant repeatedly placed non-emergency telephone calls to the wireless telephone number of Plaintiff using an automatic telephone dialing system or

prerecorded or artificial voice without Plaintiff's prior express consent in violation of federal law, including 47 U.S.C § 227(b)(1)(A)(iii).

66.    As a result of Defendant's violations of the TCPA, Plaintiff is entitled to, *inter alia*, a minimum of $500.00 in statutory damages for each violation of the TCPA, or $1,500 for each violation committed willfully or knowingly, pursuant to 47 U.S.C. § 227(b)(3).

67.    Plaintiff is also entitled to, and does seek, injunctive relief prohibiting Defendant, Westlake, from violating the TCPA in the future pursuant to 47 U.S.C. § 227(b)(3).

## COUNT II

### Violations of the FCRA, 15 U.S.C. § 1682, et seq.

68.    Plaintiff incorporates the paragraphs above as fully restated herein.

69.    The foregoing acts and omissions by Defendant constitute numerous and multiple violations of the FCRA.

70.    Westlake's conduct was willful and intentional, or, alternatively, was engaged in with a reckless disregard for consumer rights.

71.    As a result of each and every negligent violation of the FCRA, Plaintiff is entitled to actual damages, pursuant to 15 U.S.C. § 1681o(a)(1); and reasonable attorney's fees and costs pursuant to 15 U.S.C. § 1681o(a)(2), from Defendant.

72.    As a result of each and every knowing or willful violation of the FCRA, Plaintiff is entitled to actual damages or damages of not less than $100 and not more than $1,000 pursuant to 15 U.S.C. § 1681n(a)(1)(A); punitive damages as the court may allow, pursuant to 15 U.S.C. § 1681n(a)(2); and reasonable attorney's fees and costs pursuant to 15 U.S.C. § 1681n(a)(3) from Defendant.

## COUNT III

### (Invasion of Privacy – Intrusion Upon Seclusion)

73.    Plaintiff incorporates the paragraphs above as fully restated herein.

74.     Defendant through its collection conduct, has repeatedly and intentionally invaded Plaintiff's privacy.

75.     All of the calls made to Plaintiff's cell phone by Defendant were unreasonable and highly offensive invasions of Plaintiff's right to privacy.

76.     Defendant's persistent calls to his cellular phone eliminated Plaintiff's right to be left alone.

77.     Defendant's collection calls disrupted Plaintiff's privacy, disrupted Plaintiff's sleep, disrupted Plaintiff during mealtimes and continually frustrated and annoyed Plaintiff.

78.     These persistent collection calls eliminated the peace and solitude that the Plaintiff would have otherwise had in Plaintiff's home and anywhere else Plaintiff went with his cellular phone.

79.     By repeatedly calling his cellular phone, Plaintiff had no escape from these collection calls either in his home or when he left the home.

80.     By persistently dialing Plaintiff's cellular phone without prior express consent, Defendant invaded Plaintiff's right to privacy and caused Plaintiff to suffer concrete and particularized harm.

81.     Defendant's harassing collection conduct and tactic of repeatedly dialing Plaintiff on his cellular telephone after requests to stop is highly offensive to a reasonable person.

82.     Defendant intentionally intruded upon Plaintiff's solitude and seclusion.

83.     As a result of Defendant's action or inaction, Plaintiff has been damaged.

84.     Plaintiff seeks an award of actual damages, special damages, and punitive damages for Defendant's Invasion of Privacy in an amount to be determined at trial; and injunctive relief enjoining Defendant from continued or further invasion of Plaintiff's privacy.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays that judgment be entered against Defendant as follows:

- An Order declaring Defendant's conduct, as alleged above, was in violation of the TCPA;
- Injunctive relief pursuant to 47 U.S.C. § 227(b)(3)(A) prohibiting such conduct and violations of the TCPA in the future;
- Statutory damages of $500.00 for each and every one of Defendant's violations of 47 U.S.C. § 227(b)(1)(A) pursuant to 47 U.S.C. § 227(b)(3);
- Statutory damages of $1,500.00 for each and every one of Defendant's knowing and/or willful violations of 47 U.S.C. § 227(b)(1)(A) pursuant to 47 U.S.C. § 227(b)(3);
- An Order declaring Defendant's conduct, as alleged above, was in violation of the FCRA;
- An award of actual damages, in an amount to be determined at trial or damages of a maximum of $1,000 pursuant to 15 U.S.C. § 1681n(a)(1)(A), against Defendant for each incident of willful noncompliance of the FCRA;
- An award of punitive damages, as the Court may allow pursuant to 15 U.S.C. § 1681n(a)(2), against Defendant for each incident of willful noncompliance to the FCRA;
- An award for costs and reasonable attorney's fees, pursuant to 15 U.S.C. § 1681n(a)(3), against Defendant for each incident of negligent noncompliance of the FCRA;
- A finding that Defendant is liable for Invasion of Privacy;
- An award of actual damages, special damages, and punitive damages for Defendant's Invasion of Privacy in an amount to be determined at trial;
- Injunctive relief enjoining Defendant from continued or further invasion of Plaintiff's privacy; and

1  • Any and all other relief that this Court deems just and proper.

2  **DEMAND FOR JURY TRIAL**

3  Plaintiff hereby demands a trial by jury pursuant to Federal Rule of Civil

4  Procedure 38(b) on all claims so triable.

5

6

7  Dated: February 2, 2021                    Respectfully submitted,

8                                             **KAZEROUNI LAW GROUP, APC**

9

10                                    By: ___*s/ Mona Amini*_____

11                                         MONA AMINI, ESQ.
                                           *Attorneys for Plaintiff*

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28